## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:16-cv-00147-MR
## (CRIMINAL CASE NO. 1:08-cr-00101-MR-1)

| | | |
|---|---|---|
| FRANKIE LAMAR MOORE, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] and the Government's Motion to Dismiss [Doc. 5]. Petitioner is represented by Joshua Carpenter of the Federal Defenders of Western North Carolina.

## I.    BACKGROUND

On October 8, 2008, the Petitioner Frankie Lamar Moore, Jr. was charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). [Criminal Case No. 1:08-cr-00101-MR ("CR"), Doc. 1]. The Petitioner pleaded guilty to the charge pursuant to a written plea agreement. [CR Doc. 10]. In the parties' agreement, the Petitioner agreed

to waive his right to challenge his conviction or sentence in a motion filed under 28 U.S.C. § 2255, except on the basis of ineffective assistance of counsel and prosecutorial misconduct. [Id. at ¶ 19]. The Petitioner also acknowledged that the maximum term of imprisonment for a § 922(g) offense was ten years' imprisonment, but that if he were found to be an armed career criminal within the meaning of the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), he would face a statutorily required minimum sentence of 15 years and a maximum sentence of life imprisonment. [Id. at ¶ 3].

On December 31, 2008, the Honorable Dennis L. Howell, United States Magistrate Judge, conducted a plea colloquy in accordance with Rule 11 of the Federal Rules of Criminal Procedure. [CR Doc. 11]. During the colloquy, the Petitioner affirmed that he understood the charge to which he was pleading guilty and the maximum penalties he faced. [Id. at ¶ 12]. The Petitioner also affirmed that he was, in fact, guilty of the offense to which he was pleading [Id. at ¶ 27], and that he understood that if his sentence was more severe than he expected, he would still be bound by his plea and have no right to withdraw it [Id. at ¶ 22]. The Petitioner further affirmed that he understood that, by executing the plea agreement, he had waived his right to challenge his conviction and/or sentence in a post-conviction proceeding, except on the bases of ineffective assistance of counsel or prosecutorial

misconduct. [Id. at ¶ 34]. At the conclusion of the hearing, Judge Howell accepted the Petitioner's guilty plea as knowingly and voluntarily entered. [Id. at 9].

In advance of the Petitioner's sentencing, the probation officer prepared a Presentence Report ("PSR"). [CR Doc. 13]. In the PSR, the probation officer recommended that the Petitioner be found to be an armed career criminal citing the following prior convictions:

(1) a consolidated North Carolina conviction for felony discharge of a firearm/weapon into occupied property and felony breaking and entering;[1]

(2) two North Carolina convictions for felony common law robbery;

(3) a North Carolina conviction for assault with a deadly weapon inflicting serious injury ("AWDWISI"); and

(4) a South Carolina conviction for armed robbery.[2]

[Id. at ¶¶ 28, 30, 35, 36, 37].

---

[1] These offenses occurred on the same occasion and thus were counted as a single predicate.

[2] In listing the Petitioner's prior offenses, the probation officer also included two "controlled substance offenses," namely, two North Carolina convictions for possession with intent to sell/deliver cocaine. The PSR did not, however, set forth any express or implied finding that these two offenses constituted "serious drug offenses" within the meaning of the ACCA. [CR Doc. 13]. (The parties agree that these drug offenses do not qualify as such.) Thus, the sentencing judge in accepting the PSR made no finding, express or implied, treating these offenses as ACCA predicates. [CR Doc. 17 at 1]. Therefore, only the five purported violent felonies noted above support the Petitioner's ACCA status. Accordingly, the Court will limit its analysis to these five offenses.

The Petitioner's sentencing hearing was held on June 1, 2009, before the Honorable Lacy H. Thornburg, United States District Judge.[3]   At the hearing, the Court calculated a total offense level of 30 and a criminal history category of VI, which would yield an advisory Guidelines range of 168 to 210 months' imprisonment.  The Court, however, also determined the Petitioner to be an armed career criminal, thus subjecting him to a mandatory minimum term of 180 months, thus adjusting his Guidelines range to 180 to 210 months.  The Court sentenced the Petitioner to 195 months' imprisonment, the middle of that Guidelines range.  [CR Doc. 16].  The Petitioner did not appeal.

On June 2, 2016, the Petitioner filed the present motion to vacate his sentence under 28 U.S.C. § 2255, arguing that his sentence was improperly enhanced under the ACCA in light of Johnson v. United States, 135 S. Ct. 2551 (2015).  [Doc. 1].  On July 12, 2016, the Government filed a motion to dismiss the Petitioner's motion, contending that the Petitioner waived his right to seek collateral review of his sentence, except on bases not asserted in his motion; that the Petitioner's claim is procedurally defaulted; and that, in any event, he still has at least three qualifying predicates for purposes of the ACCA.  [Doc. 5].  The Petitioner filed a reply in support of his motion to

_____

[3] Following Judge Thornburg's retirement, this matter was reassigned to the undersigned.

vacate on August 16, 2016.  [Doc. 6].  At the request of the Court, the parties filed supplemental briefs in December 2017.  [Docs. 8, 9, 10].

Having been fully briefed, this matter is ripe for disposition.

## II.   STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter, the Court finds that the argument presented by the Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.   DISCUSSION

### A.   Waiver

The Government first contends that the Petitioner knowingly and voluntarily waived in his Plea Agreement any right to challenge his sentence in a post-conviction proceeding except for claims of ineffective assistance or prosecutorial misconduct.  Accordingly, the Government contends, Petitioner has waived any right to assert his Johnson claim.

Contrary to the Government's contention, the Petitioner's claim is not barred by his appellate waiver. While the Petitioner's Plea Agreement includes a waiver of all rights to appellate and post-conviction relief except on the grounds of prosecutorial misconduct and ineffective assistance of counsel, it is well-established that "a defendant could not be said to have waived his right to . . . review of a sentence imposed in excess of the maximum penalty provided by statute[.]" United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); see also United States v. Crisp, No. 2:14-cr-00023-MR, Doc. 9 at 6-7 (W.D.N.C. May 7, 2015) ("The language used in the parties' Plea Agreement stipulating that the Defendant may only appeal on the grounds of ineffective assistance and prosecutorial misconduct is not comprehensively correct. In addition to these grounds, a defendant can never waive his right to appeal a claim that a conviction was obtained in violation of the Sixth Amendment right to counsel; or that a sentence was imposed in excess of the maximum penalty provided by statute; or that a sentence was based on a constitutionally impermissible factor such as race.") (internal citations omitted).

Here, without the ACCA enhancement, the Petitioner would have faced a statutory *maximum* sentence of 120 months. See 18 U.S.C. § 924(a)(2). With the ACCA enhancement, however, the Petitioner faced a mandatory

*minimum* sentence of at least 180 months.  See 18 U.S.C. § 924(e). If the Petitioner's ACCA enhancement is determined to be invalid, then the Petitioner received a sentence greater than the maximum sentence he could have faced otherwise.  The appellate waiver set forth in the Plea Agreement, therefore, does not bar the Petitioner's present claim.

### B.    Procedural Default

The Government next argues that the Petitioner's Johnson claim is subject to dismissal because he failed to raise such claim on direct review and he has not shown cause or prejudice to excuse that procedural default. In support of this argument, the Government cites Whiteside v. United States, in which the Fourth Circuit noted that "alleged futility cannot serve as 'cause' for a procedural default in the context of collateral review."  775 F.3d 180, 185 (4th Cir. 2014) (en banc), cert. denied, __ U.S. __, 135 S. Ct. 2890 (2015).

It is well-established that where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised on collateral review only if the defendant can first demonstrate cause and actual prejudice or that he is actually innocent of the conviction he challenges. Bousley v. United States, __ U.S. __, 523 U.S. 614, 622 (1998); see also Trevino v. Thaler, 569 U.S. 413, 421 (2013) ("A prisoner may obtain federal

review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law.") (quoting <u>Martinez v. Ryan</u>, 566 U.S. 1, 10 (2012)).  With respect to the cause-and-prejudice standard, a petitioner must demonstrate (1) the existence of cause for a procedural default that "turns on something external to the defense"; and (2) "actual prejudice resulting from the errors of which he complains."  <u>United States v. Pettiford</u>, 612 F.3d 270, 280 (4th Cir. 2010) (citations omitted).

There are, however, exceptions to this cause-and-prejudice standard. In <u>Reed v. Ross</u>, the Supreme Court recognized three specific situations in which the novelty of a constitutional claim would operate as the functional equivalent for "cause" relieving a defendant's failure to raise the issue directly:

> First, a decision of this Court may explicitly overrule one of our precedents. Second, a decision may overturn a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. And, finally, a decision may disapprove a practice this Court arguably has sanctioned in prior cases.

468 U.S. 1, 17 (1984) (internal citations, alterations, and quotation marks omitted).

This case clearly falls within the first category of cases identified by <u>Reed</u>.  When the Petitioner was sentenced in 2009, the Supreme Court had

already rejected a vagueness challenge to the ACCA's residual clause in James v. United States, 550 U.S. 192, 210 n.6 (2007).  The recent decision in Johnson expressly overruled James.  Johnson, 135 S. Ct. at 2563 ("Our contrary holdings in James and Sykes are overruled.").  Thus, under Reed, the decision in James excused the Petitioner from having to raise a vagueness challenge to the ACCA's residual clause on direct appeal.  See Reed, 468 U.S. at 17 ("By definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a state court to adopt the position that this Court has ultimately adopted.  Consequently, the failure of a defendant's attorney to have pressed such a claim before a state court is sufficiently excusable to satisfy the cause requirement.").

In the wake of Johnson, several courts have applied Reed to find "cause" to excuse the procedural default of an unappealed Johnson claim. See United States v. Gomez, No. 2:04-cr-2126-RMP, 2016 WL 1254014, at *4 (E.D. Wash. Mar. 10, 2016); Cummings v. United States, No. 15-cv-1219-JPS, 2016 WL 799267, at *7 (E.D. Wis. Feb. 29, 2016), aff'd, 681 F. App'x 523 (7th Cir. 2017); United States v. Dean, No. 3:13-cr-00137-SI, 2016 WL 1060229, at *6 (D. Or. Mar. 15, 2016).  This Court agrees with those courts

that have held that a <u>Johnson</u> claim falls clearly within the first category of cases noted by <u>Reed</u> that constitute cause to excuse procedural default. Therefore, the Court finds that the Petitioner has shown cause excusing his procedural default for failing to raise his <u>Johnson</u> claim in his prior proceedings.[4]

Further, the Petitioner has demonstrated actual prejudice in that he received a mandatory minimum sentence in excess of the statutory maximum sentence he would have otherwise been subjected to without the ACCA enhancement. As the Petitioner has demonstrated both cause and actual prejudice for his failure to assert a challenge to his armed career criminal status on direct review, the Court concludes that his present claim has not been procedurally defaulted.

---

[4] The Government does not acknowledge <u>Reed</u> in its brief, relying instead solely on the general futility principle applied by the Fourth Circuit in <u>Whiteside</u>. <u>Whiteside</u>, however, is inapplicable to the present action, as that case addressed whether the petitioner was entitled to relief under the Fourth Circuit's decision in <u>Simmons v. United States</u>, 649 F.3d 237 (4th Cir. 2011) (<u>en banc</u>), and not a situation where the Supreme Court overruled one of its precedents. The Supreme Court had never spoken on the contested legal issue addressed in <u>Whiteside</u>; it only involved the Circuit Court overruling one of its own precedents. As a result, the <u>Reed</u> exception was inapplicable and the case was controlled by the principle of general futility.

## C.   Petitioner's <u>Johnson</u> Claim

Having determined that the doctrines of waiver and procedural default do not bar the Petitioner's motion, the Court now turns to the substance of the Petitioner's <u>Johnson</u> claim.

The ACCA provides for a mandatory minimum term of fifteen years' imprisonment for any defendant who violates 18 U.S.C. § 922(g) and who has three previous convictions for a "violent felony" or a "serious drug offense."  18 U.S.C. § 924(e)(1).  When the Petitioner was sentenced, a "violent felony" was defined to include any crime punishable by a term of imprisonment exceeding one year that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another [the "force clause"]; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives [the "enumerated offense clause"], or otherwise involves conduct that presents a serious potential risk of physical injury to another [the "residual clause"].

<u>Id.</u> § 924(e)(2)(B).

In <u>Johnson</u>, the Supreme Court struck down the ACCA's residual clause as unconstitutionally vague.  <u>Johnson</u>, 135 S. Ct. at 2563.  As a result of <u>Johnson</u>, a defendant who was sentenced to a statutory mandatory minimum term based on a prior conviction that satisfies only the residual

clause of the "violent felony" definition is entitled to relief from his sentence. See United States v. Newbold, 791 F.3d 455, 460 (4th Cir. 2015) (holding that the improper imposition of an ACCA-enhanced sentence is an error that is cognizable in a motion to vacate filed under 28 U.S.C. § 2255). The Supreme Court has held that Johnson is retroactively applicable to claims asserted on collateral review. Welch v. United States, 136 S. Ct. 1257, 1265 (2016).

Here, the Government argues that the Petitioner is not entitled to relief because he still has three predicate convictions that constitute violent felonies under the force clause of the ACCA, and thus Johnson is inapplicable.[5] Specifically, the Government contends that Petitioner's South Carolina conviction for armed robbery and his North Carolina convictions for breaking and entering and AWDWISI still qualify as predicate felonies.[6]

---

[5] In a supplemental brief, the Government argues that the Petitioner has not demonstrated that the sentencing court classified his prior offenses as violent felonies under the residual clause as opposed to the force clause of the ACCA. Absent such a showing, the Government contends, the Petitioner cannot show that he is entitled to relief under Johnson. [Doc. 9 at 2, 4-5]. The Fourth Circuit, however, has soundly rejected this argument. See United States v. Winston, 850 F.3d 677, 682 (4th Cir. 2017) ("[W]hen an inmate's sentence may have been predicated on application of the now-void residual clause and, therefore, may be an unlawful sentence under [Johnson], the inmate has shown that he 'relies on' a new rule of constitutional law within the meaning of 28 U.S.C. § 2244(b)(2)(A). This is true regardless of any non-essential conclusions a court may or may not have articulated on the record in determining the defendant's sentence.").

[6] The Government concedes that the Petitioner's prior convictions for common law robbery under North Carolina law do not qualify as "violent felonies" for purposes of the ACCA in light of United States v. Gardner, 823 F.3d 793, 804 (4th Cir. 2016).

The Fourth Circuit held in <u>United States v. Doctor</u> that South Carolina robbery categorically falls under the ACCA's force clause and therefore still constitutes a violent felony after <u>Johnson</u>.  842 F.3d 306, 312 (4th Cir. 2016), <u>cert. denied,</u> 137 S. Ct. 1831 (2017).  Likewise, the Fourth Circuit held in <u>United States v. Mungro</u> that a conviction under North Carolina's breaking or entering statute is equivalent to the generic offense of burglary and thus constitutes a violent felony under the enumerated offense clause of the ACCA.  754 F.3d 267, 272 (4th Cir.), <u>cert. denied</u>, 135 S.Ct. 734 (2014).  It is therefore uncontested that the Petitioner has at least two predicate convictions for the purpose of the ACCA.  Thus, the Petitioner's motion to vacate turns on whether his North Carolina AWDWISI conviction still qualifies as a violent felony under <u>Johnson</u>.

As the offense of AWDWISI does not fall within the enumerated offense clause, the Petitioner's prior conviction may still qualify as a "violent felony" only if the offense of AWDWISI under North Carolina law falls within the so-called "force clause" and thus "has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).[7]

---

[7] This is the point at which the law and this decision depart from common sense.  The determination of whether the Petitioner is subject to a fifteen-year mandatory minimum is determined not by any examination of the Petitioner's actions in committing the offense

The Supreme Court has defined "physical force" as used in the ACCA as "violent force -- that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010). Additionally, the Supreme Court has held that the term "'the use . . . of physical force against the person or property of another' -- most naturally suggests a higher degree of intent than negligent or merely accidental conduct." Leocal v. Ashcroft, 543 U.S. 1, 9 (2004); see also United States v. McNeal, 818 F.3d 141, 154 (4th Cir. 2016) (discussing Leocal); United States v. Vereen, 703 F. App'x 171 (4th Cir. 2017) (noting that the "use" of force "requires a *mens rea* more culpable than recklessness" in construing U.S.S.G. § 2K2.1(a)(4)(A)).

In determining whether a state offense qualifies as a violent felony under the force clause, the Court generally employs the categorical approach described by the Supreme Court in Descamps v. United States,

---

at issue or any prior offense. Rather, the analysis hinges on the elements of a statute under which the Petitioner was convicted as such statute may apply to some hypothetical defendant accused of violating such statute in a manner entirely different from anything the Petitioner herein ever did or was ever accused of having done. Here, the Petitioner was convicted of AWDWISI by assaulting his victim with a handgun and causing serious injury. [CR Doc. 13 at 9 ¶36]. However, the Court's analysis in determining whether this was a "violent felony" must focus on "the minimum conduct needed to commit [the] offense," Doctor, 842 F.3d at 309, and therefore will hinge on the application of the AWDWISI statute to the offense of driving while impaired. State v. Jones, 353 N.C. 159, 538 S.E.2d 917 (2000). As the Fourth Circuit has aptly stated, "[common sense] would serve only as [a] distraction" in this analysis. United States v. Parral-Dominguez, 794 F.3d 440, 446 (4th Cir. 2015); see also United States v. Geddie, 125 F. Supp. 3d 592, 597 (E.D.N.C. 2015).

570 U.S. 254 (2013). Under the categorical approach, the Court must examine whether the offense has as an *element* the "use, attempted use, or threatened use of physical force against the person of another," and must not consider "the particular facts underlying the defendant's conviction." United States v. Burns-Johnson, 864 F.3d 313, 316 (4th Cir. 2017) (citing Descamps, 133 S.Ct. at 2283), pet. for cert. filed Oct. 5, 2017.

> The categorical approach directs courts to examine only the elements of the state offense and the fact of conviction, not the defendant's conduct. In conducting this analysis, we focus on the minimum conduct required to sustain a conviction for the state crime, although there must be a realistic probability, not a theoretical possibility, that a state would actually punish that conduct. We look to state court decisions to determine the minimum conduct needed to commit an offense and to identify the elements of a state common law offense. We then compare those elements to the definition of violent felony in the force clause.

Doctor, 842 F.3d at 308-09 (citations and quotation marks omitted).

A modification to the categorical approach is required where the state statute defining the offense is "divisible." Descamps, 570 U.S. at 257. In the case of a divisible statute, the Court uses the "modified categorical approach," whereby the Court may consider "a limited set of documents to determine the basis of a defendant's conviction." United States v. Gardner, 823 F.3d 793, 802 (4th Cir. 2016). A statute is divisible if it "consists of

15

multiple, alternative elements creating several different crimes, some of which would match the generic federal offense and others that would not." United States v. Vinson, 805 F.3d 120, 123 (4th Cir. 2015) (en banc). Thus, a crime is divisible "only if it is defined to include multiple alternative *elements* (thus creating multiple versions of a crime), as opposed to multiple alternative *means* (of committing the same crime)." Omargharib v. Holder, 775 F.3d 192, 198 (4th Cir. 2014). "Elements, as distinguished from means, are factual circumstances of the offense the jury must find unanimously and beyond a reasonable doubt." Id. at 198-99 (citation and internal quotation marks omitted).

Turning now to the offense of AWDWISI, the relevant North Carolina statute provides that "[a]ny person who assaults another person with a deadly weapon and inflicts serious injury shall be punished as a Class E felon." N.C. Gen. Stat. § 14-32(b). In order to convict a defendant for AWDWISI, the state must establish the following elements: "(1) an assault, (2) with a deadly weapon, (3) inflicting serious injury, (4) not resulting in death." State v. Jones, 353 N.C. 159, 164, 538 S.E.2d 917, 922 (2000). Thus, a cursory analysis would seem to indicate that AWDWISI constitutes a crime of violence. It requires proof of action that is not only capable of causing physical pain or injury to another, but actually causes serious injury.

It requires the use of a deadly weapon, and it requires an overt act to cause the injury. It also requires an assault, which by its nature is an intentional act. The Supreme Court of North Carolina, however, has held that the state can obtain a conviction for AWDWISI upon a showing of "either an actual intent to inflict injury or culpable or criminal negligence from which such intent may be implied." See id. at 164-65, 538 S.E.2d at 922-23.

The question thus arises as to whether this "implied intent" arising from "culpable negligence" constitutes a *means rea* element sufficient to satisfy the "use" requirement of the force clause. The North Carolina Pattern Jury Instructions direct that the jury must find intent to assault the victim, N.C. Pattern Jury Instructions -- Criminal § 208.15[8], and that such intent "must ordinarily be proved by circumstances from which it may be inferred." Id. at § 120.10. This would imply that actual intent is an element of AWDWISI and it thus qualifies as a crime of violence. The *holding* of Jones, however, indicates otherwise and illustrates the imprecision of the language used by the Court in that opinion.

---

[8] The North Carolina Supreme Court has defined "assault" as "an overt act or attempt, with force or violence, to do some immediate physical injury to the person of another, which is sufficient to put a person of reasonable firmness in fear of immediate physical injury." State v. Porter, 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995).

In Jones, the defendant operated a motor vehicle while under the influence of alcohol, causing serious injury to several victims, and the death of two. The evidence of the defendant's "intent" was his general intent to operate a motor vehicle in a manner that could foreseeably cause serious harm. The Supreme Court of North Carolina held that this was sufficient to support the intent element of AWDWISI. The United States Supreme Court, however, in Leocal specifically held that the general intent in operating a motor vehicle while under the influence did *not* suffice to satisfy the intent/*mens rea* element inherent in the "use" requirement of the force clause. 543 U.S. at 9.[9] Thus, it is clear that the general intent that is implied from the circumstantial evidence of culpably negligent action sufficient to support a conviction under AWDWISI is *not* sufficient to fulfill the "use" element of the force clause of the ACCA. This conclusion is supported by the decisions of the other district courts in North Carolina that have addressed the issue. United States v. Geddie, 125 F. Supp. 3d 592, 599-600 (E.D.N.C. 2015), aff'd in part and vacated in part on other grounds, 644 F. App'x 256 (4th Cir.), cert. denied, 137 S. Ct. 217 (2016); Hunt v. United States, No. 1:13CV848, 1:04CR414-1, 2016 WL 4183311, at *2 (M.D.N.C.

---

[9] Leocal addressed the language of the force clause in 18 U.S.C. § 16, which is identical to the force clause of 18 U.S.C. § 924(e). Id.

Aug. 5, 2016); <u>Callahan v. United States</u>, No. 7:03-CR-00085-F-1, 7:16-CV-00083-F, 2016 WL 3962947, at *3 (E.D.N.C. July 21, 2016).[10]

The Government contends, however, that <u>Jones</u> merely expresses *alternatives* for establishing the *mens rea* element of AWDWISI and thus the statute is divisible.  [Doc. 4 at 10].  Applying the modified categorical approach, the Government contends that the indictment charging the Petitioner with AWDWISI uses language that would have required a jury to find that the Petitioner acted with actual intent.  Since such actual-intent version of AWDWISI would meet the definition of "violent felony" under the force clause, the Government contends, the Petitioner's conviction thereunder would serve as the third qualifying predicate conviction to support the application of the ACCA.  [<u>Id.</u> at 12-13].

The Government's argument fails, however, because intent and culpable negligence are not distinct elements of separate assault offenses. <u>See</u> <u>State v. Spellman</u>, 167 N.C. App. 374, 384, 605 S.E.2d 696, 703 (2004) (affirming conviction for assault with deadly weapon on government official, and noting that while intent is an essential element of crime of assault, "intent

---

[10] It should also be noted that when the Fourth Circuit considered another subsection of the same statute, N.C. Gen. § 14-32(a) (assault with deadly weapon with intent to kill, or "AWDWIK"), the Court concluded that the use element of the force clause was fulfilled not by the general intent inherent in the assault element, but rather by the specific intent inherent in the "intent to kill" element.  <u>Vereen</u>, 703 F. App'x at 173.

may be *implied from* culpable or criminal negligence . . . if the injury or apprehension thereof is the direct result of intentional acts done under circumstances showing a reckless disregard for the safety of others and a willingness to inflict injury"), rev. denied, 359 N.C. 325, 611 S.E.2d 845 (2005) (citation omitted; emphasis added); State v. Coffey, 43 N.C. App. 541, 543-44, 259 S.E.2d 356, 357 (1979) (rejecting defendant's claim that state did not prove intent, finding it sufficient that state had shown that defendant acted with culpable and criminal negligence).  The North Carolina Pattern Jury Instructions require the jury only to find that the defendant "intended" the conduct at issue.  See N.C. Pattern Jury Instructions – Criminal § 208.15. Because the jury makes a determination only of the defendant's general intent to commit the underlying conduct, the defendant's level of culpability constitutes only a means of committing the crime, not an element.  Geddie, 125 F. Supp. 3d at 599-600; Callahan v. United States, 2016 WL 3962947, at *3.

As AWDWISI is not a divisible offense, and because the state can obtain a conviction based upon a showing of culpable negligence, the Court concludes that the offense is categorically not a "violent felony" within the meaning of the ACCA's force clause.  See Geddie, 125 F. Supp. 3d at 601 ("Because the state may obtain a conviction upon a showing of 'a thoughtless

disregard of consequences,' AWDWISI cannot categorically be a 'violent felony.'"); Callahan, 2016 WL 3962947, at *3 ("Because [AWDWISI] can be committed with culpable negligence, it is categorically broader than the definition of 'violent felony' contained in the force clause."); see also Hunt, 2016 WL 4183311, at *2 (conceding, in light of Geddie, that petitioner's AWDWISI convictions do not qualify as "violent felonies" under the ACCA).

## IV. CONCLUSION

Because the Petitioner's prior conviction for AWDWISI no longer qualifies as an ACCA predicate in light of Johnson, the Petitioner no longer has the three predicate convictions required to classify him as an armed career criminal. Accordingly, the Petitioner's motion to vacate will be granted, and the Petitioner will be resentenced without application of the ACCA.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Petitioner's Motion to Vacate [Doc. 1] is **GRANTED**; the Government's Motion to Dismiss [Doc. 5] is **DENIED**; and the Petitioner's sentence is **VACATED**.

**IT IS FURTHER ORDERED** that the Petitioner shall be resentenced in accordance with this Order.

An Order directing the return of the Petitioner to this District for resentencing shall be entered contemporaneously with this Order.

**IT IS SO ORDERED.**

Signed: March 16, 2018

Martin Reidinger
United States District Judge